CHARLES ROGERS AND SAMUEL MARFIELD, *vs.* THOMAS SEVERSON.—*December* 1844.

In an action to recover for repairs done to a carriage in June 1837, the plaintiff offered an absolute bill of sale of it, from *M.* to the defendants, dated July 1836. The defendants, for the purpose of showing that the bill of sale to them was designed to be a mortgage, or a conditional sale, and to rebut the inference, that *M.*, who continued to be the driver of the carriage, and took it to the shop of the plaintiff, was their agent, proposed to offer in proof, entries in their *Blotter, Ledger,* and *account books,* in relation to the transactions between them and *M.*; HELD inadmissible to modify the bill of sale, and insufficient to rebut an agency in 1837.

Various circumstances in relation to the possession and ownership of a carriage sent to a mechanic for repairs stated and considered, making a case for the exclusive consideration of the jury, whether the repairs were made by the authority of the defendants.

For repairs made to a carriage for the benefit of the defendants, and with their knowledge and approbation, they would be liable; but whether so made, is a question for the jury.

In what character a person who takes a carriage to a mechanic to be repaired, is in possession, whether as driver, servant, agent, or owner, is a fact for the jury.

Where repairs done to a carriage, enured to the benefit of a third person, who in fact, took it to be repaired, he is responsible; and where the state of the proof enables the jury to regard the case in that aspect, it is error to instruct them *imperatively*, that upon finding the fact of property in the defendants, and repairs made with their knowledge and approbation, that the plaintiff is entitled to recover.

APPEAL from *Baltimore* County Court.

This was an action of *assumpsit*, commenced on the 1st February 1838, by the appellee against the appellants, who pleaded *non assumpsit*, on which plea issue was joined.

1ST EXCEPTION. At the trial of the cause, the plaintiff offered proof, by *Lerew*, that *Mr. Charles Rogers* said, he would not pay for any work done for him, unless he, or his

49    v.2

partner, sent a written order, or came himself; the witness said he never saw any written order from *Mr. R.*, or *Marfield*, he generally saw *Mr. R.* there, mostly, every day, which might be the reason he saw no orders.    Witness said he was a partner of *Mr. Colvin* during the whole time, and that his bills against *R.* and *M.* were about $800, or $900.    Witness also proved, that *T. D. Colvin* sold to *R.* and *M.* a darkish colored carriage, with *C* springs, and dark blue lining; which carriage is now, or was lately in *Bishop's* yard, the carriage originally built by *Lee*; the sale might have been three, four, or five years ago; referring to a memorandum, made in deponent's presence, from the book of *Colvin*, he, witness, proves the time of sale in April 1836; after the sale, the carriage was brought by *John Mitchell*, or some person who drove for *Mitchell*, to *Colvin's* shop where deponent worked, seven or eight, or perhaps a dozen times, to be repaired, and deponent worked on it, and the bills for the repairs were paid by *R.* and *M.*; deponent knows that *Mitchell* got the carriage from *R.* and *M.*, but whether he bought it or not, deponent does not know; *Mitchell* never told him he was the owner of the carriage, and if he had told him, witness would not have believed him: all the repairs, at all times, were paid by *R.* and *M.*; witness would not have trusted *Mitchell* for the repairs; has examined the accompanying bill, and the charges for the work are reasonable and fair, according to that time, And also proved by a witness, named *Bishop*, that he was a carriage maker, and that a certain *John Mitchell* brought to his shop a carriage, to be repaired; that *Mitchell* agreed to pay cash for the repairs, when finished.    After the repairs were completed, witness refused to let the carriage go, until the repairs were paid for; *Mitchell* then requested witness to call upon the defendants, which he did.    They agreed to pay him, and he then charged the repairs to the defendants, and suffered *Mitchell* to take away the carriage.    He also proved, that the defendants, afterwards, paid for the repairs; that the contract, for the repairs, was made with *Mitchell*; that if he had considered the defendants responsible for them, in the

first instance, he would not have objected to *Mitchell's* carrying away the carriage. Witness does not know what arrangement there was between *Mitchell* and the defendants, which induced the latter to assume the payment of the said repairs. That said repairs were not entered in his books, until he knew who was to pay for them. He also proved, that in 1838, a dark colored carriage, with blue lining and C springs, (the carriage might have been called black,) was sent to the shop of witness, by *Marfield*, one of the defendants, with orders to have it repaired; and that said carriage still remains at the shop. Witness could not say, that it was the same carriage on which he had formerly done repairs. The plaintiff, further to support the issue on his side, proved by *Booth*, that the carriage, now at the shop of the said witness, *Bishop*, is the same carriage upon which repairs were done, by the plaintiff, and for the amount of which, this suit is instituted to recover. Said *Booth* further proved, that *Rogers*, one of the defendants, was frequently at the shop of the plaintiff, while the said carriage was undergoing repairs, and that he saw it there. He, witness, however, did not hear *Rogers* agree to pay for the repairs, nor does he know to whom the plaintiff originally charged the same. The witness further proved, that in order to see the carriage, *Rogers* had to go up stairs out of his way, and out upon the open platform, where the carriage was. The plaintiff, further to support the issue on his side, offered in evidence the following account: "*Rogers and Marfield to Thomas Severson, Dr. 4th June* 1847." The items amounting to \$199.07, consisting of various repairs done to a carriage, and \$43.75 for interest; and proved, that the work done on the carriage, was as is in said bill, and that the prices therein charged for the same are reasonable. The witness further stated, that he does not know that the defendants ever undertook to pay for the repairs; that he had heard that the carriage had been brought there by the said *Mitchell*. The plaintiff further proved, by *Col. Moale*, that in a conversation, which had taken place between *Col. Moale* and one of the defendants, between 1835 and December 1837, who stated, he

thinks that they had a carriage, and that *Mitchell* drove for them.

The above evidence being taken, the defendants prayed the court to instruct the jury :

1st. That if they believed from the testimony, that *Rogers*, one of the defendants in this case, stated to *Colvin*, that he would not be responsible for any work done upon the carriages taken to him, by *Mitchell*, for repair, unless upon his, the said *Rogers*, own order, written or verbal; and if in the instances where the defendants had actually paid for such repairs, they had been made by the said *Colvin*, at the request of the defendants, or either of them; the facts stated in the said deposition of *Lerew*, are wholly incompetent to prove, that any authority was given by the defendants to the said *Mitchell*, to make a contract for them with the plaintiff, for the repairs for which this suit is brought: and that the said deposition cannot be considered by the jury for such a purpose.

2nd. That the facts, stated in the evidence of *Bishop*, are also wholly incompetent to prove, that said *Mitchell* was authorised by the defendant, as their agent, to contract for them with the plaintiff, for the said repairs.

3rd. That the deposition of *Lerew*, and the evidence of *Bishop*, are altogether incompetent to establish a contract for the repairs done upon the carriage by the plaintiff, in this case, between him and the defendants; and that, unless the jury believe that a contract did exist, upon the part of the plaintiff, to do the repairs stated in the proof, and on the part of defendants, to pay him for them, then the plaintiff is not entitled to recover.

4th. That there is no evidence, in this cause, from which the jury can infer, that the said *Mitchell* did, in fact, contract with the said *Colvin*, in the character of agent for the defendants.

All which said several prayers, the court, (MAGRUDER and PURVIANCE, A. J.,) refused, because the court considered the whole case, so far as concerns the proposition of law, submitted to them on both sides, as covered by the prayers made by the plaintiffs, and granted by the court.

The defendants excepted to the refusal of the court, to grant their prayers, and to the granting of the plaintiff's prayers, but this exception was abandoned by the appellants in this court.

2ND EXCEPTION. The defendants, to support the issue on their side, offered in evidence, by a witness, named *Blasdel,* that said *Mitchell* had left the State of *Maryland,* about three months ago, before the present term of *Baltimore* county court, and had gone, he did not know where; but that he believed that he had enlisted, and was somewhere in *Florida;* and also, the docket entries of the *subpœna* docket, to shew that a *subpœna* had been issued, upon the part of the plaintiff, against the said *Mitchell,* as a witness in this case, to the present term of *Baltimore* county court, and that the same had been returned *"non est;"* the said docket entries showing, that he had been returned, summoned, for three terms, prior to the present, on behalf of the plaintiff, and that he had never been summoned by the defendant. The defendants further offered to prove, by the said *Blasdel,* that said *Mitchell* was in possession of the carriage, on which said repairs, proved to have been done by the plaintiff, were placed; and that in a conversation with said *Mitchell,* he had claimed the said carriage as his, under a contract with the defendants; that they would pass their title in it to him, when he should pay the money he had agreed to give them for it.

To the admission of which said declaration and statement of the said *Mitchell,* as competent evidence, the counsel for the plaintiff objected, and the court, (MAGRUDER and PURVIANCE, A. J.,) sustained the objection, and rejected the evidence. The defendants excepted.

3RD EXCEPTION. The defendants further to support the issue on their side, offered to give in evidence the following entries in the *Blotter* of the defendants, and offered to prove, that the same were made on the 8th April 1836, as they purport to be made in said book.

These entries were headed.

*"John Mitchell to Rogers and Marfield, Dr. Baltimore, 8th April* 1836. *To bill of sale, and recording carriage,* 6.50, *per*

*horses*, 1.50." And also offered to give in evidence, the entries in the *Ledger* of the defendant; and offered to prove, that they were made therein, at the respective dates on which they purport to have been made.

"*John Mitchell in account with Rogers and Marfield.*" This account consisted of various debits and credits, from 1st September 1835, to 28th April 1837, and included carriages and harness, whips, hay, oats, horses, &c., and cash.

The above evidence was offered to prove, that the bill of sale, given in proof by the plaintiff, was designed as a mortgage between the parties to it, or as a conditional sale of the carriage therein named, being made by the defendants to the said *Mitchell*; and also to rebut the evidence offered by the plaintiff, that the said *Mitchell* acted as the servant or agent of the defendants, and to shew the true relationship which existed between the defendants and the said *Mitchell*. The above evidence was also offered as evidence, in connection with the testimony of *Blasdel*, which said evidence had been previously rejected by the court, for the purpose of establishing each of the facts above stated, if the court should be of opinion, that the same is not evidence for all the purposes above stated. To all of which evidence, the counsel for the plaintiff objected, and his objection was sustained by the court. The defendants excepted.

4TH EXCEPTION. The plaintiff, by his counsel, then prayed the court to instruct the jury as follows:

1. If the jury shall believe, that the carriage on which the repairs were made, was at the time of such repairs, the property of the defendants, and that the repairs while going on, were seen by, and approved by the defendants, or either of them, that then the plaintiff is entitled to recover such sum, as the jury may believe from the testimony, to be a just and reasonable compensation for the work and labor done.

2. If the jury shall believe from the testimony, that *Mitchell* was the driver of the defendants, at the time the repairs were made, and that he took the carriage to the shop of the plaintiff, to be repaired, and that while the repairs were being made,

they were shewn to, and approved of by the defendants, or either of them, that then the plaintiff is entitled to recover such sum, as the jury shall believe from the testimony, to be a just and reasonable compensation for the work and labor done, which instructions the court gave. The defendants excepted.

It was agreed in this court, that an absolute bill of sale of a carriage was offered in evidence in the court below, from *John Mitchell* to the defendants, dated 8th July 1836; that the account, in the *Blotter* of the plaintiff, (*ante* 387,) was first headed, "*John Mitchell to Thomas Severson, Dr.*," and that the name of "*John Mitchell*" was cancelled, and the name of "*Rogers & Marfield*" written above it, and that these facts be added to the record.

The verdict and judgment being for the plaintiff, the defendants prosecuted this appeal.

The cause was argued before ARCHER, C. J., DORSEY, CHAMBERS and MAGRUDER, J.

By G. L. DULANY for the appellants, and
By LATROBE for the appellee.

ARCHER, C. J., delivered the opinion of this court.

From the evidence in the cause, we should infer, that the carriage, for the repairs of which this suit has been brought, was taken by *Mitchell* to the shop of the plaintiff for repair; the account for repairs, having been originally charged to *Mitchell*, by the plaintiff. There is evidence to show, that the property of the carriage was in the defendants, but the evidence does not conclusively show, under what circumstances *Mitchell* came into possession thereof. He is proved, at one period of time, to have been the driver of a carriage for the defendants, but whether at the particular period of the repairs, is uncertain. It is also in evidence, that *Mitchell* had repairs of the same carriage done at several times, and that defendants paid for them, and that *Mitchell* had contracted with *Bishop* for the repair of a carriage, but whether of the one in question,

is not known. It is also in proof, that the defendants saw the carriage while the repairs were being made, at several times ; and it is further proved, that they were in possession of the carriage in the year 1838, having brought it to the shop of *Bishop* to repair, some time during that year; how long after the repairs charged in the account filed in this case, does not appear.

Under all the evidence in the case, we think it was for the jury to determine, whether the repairs were made by authority of the defendants. If indeed, they were made for the benefit of the defendants, and with their knowledge and approbation, they would be clearly liable, but whether they were so made, was surely a question which could be determined by the jury alone. The repairs may have enured to the benefit of *Mitchell*, unless, in regard to the carriage, he was in the condition of an agent or servant of the defendants. In what manner he was in possession of the carriage, whether as driver, servant, or agent of the defendants, or otherwise, was a fact to be found by the jury.

We therefore think, that the court below were in error in their first instruction to the jury in the fourth exception, which imperatively declared the right of the plaintiff to recover, upon the finding of the fact of property in the defendants, and that the repairs were made with their knowledge and approbation.

But, we think the court were right in their second instruction to the jury in the same exception : if the jury found, in addition to the facts referred to in the first prayer, the additional fact, that *Mitchell* was the driver of the defendants, when he took the carriage for repair, they would be clearly liable for such repairs. *Mitchell*, in this aspect of the case, might and ought, in the absence of evidence to the contrary, to be considered as the servant of the defendants, and if such servant took his carriage to repair, and repairs were made, and known and approved by the defendants, the verdict, in that event, should have been for the plaintiff.

We think the court were right in rejecting the account of the defendants in the third exception, against *John Mitchell*,

as evidence for the purposes for which it was offered. If it could be admissible to prove, that the bill of sale was in fact a mortgage, and the character of the evidence was such as could be received, we perceive nothing in the account which is sufficient to prove such fact. The other purposes for which it was offered, were not insisted upon in the argument, nor if they had been, do we think it could have been received.

The first exception, we considered as having been abandoned by the appellants.

**JUDGMENT REVERSED AND PROCEDENDO AWARDED.**